# Supreme Court of Florida

---

No. SC2023-0247

---

**ANDREW H. WARREN,**
Petitioner,

vs.

**RON DESANTIS, GOVERNOR,**
Respondent.

June 22, 2023

CANADY, J.

On August 4, 2022, Governor Ron DeSantis issued Executive Order 22-176 suspending Petitioner Andrew H. Warren, the elected State Attorney for the Thirteenth Judicial Circuit of the State of Florida, on the grounds of "neglect of duty" and "incompetence." More than six months later, Petitioner filed a petition in this Court arguing that the Governor lacked authority to issue the Executive Order and requesting the issuance of a writ of quo warranto directed to the Governor and alternatively seeking a writ of mandamus commanding the Governor to reinstate him. After the

filing of the petition, our Court sought briefing from the parties, which concluded on May 4, 2023.  We agree with the Governor that the petition should be denied on the ground of unreasonable delay.[1]

Within two weeks of his suspension, Petitioner filed suit in federal district court seeking, among other things, a writ of quo warranto on the ground that the suspension order was facially insufficient under Florida law.  Quite predictably, the federal district court promptly dismissed that state-law claim after concluding that the Eleventh Amendment to the United States Constitution barred that claim from being brought in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Petitioner then waited almost five months before finally petitioning this Court and requesting our "expeditious review" of his state-law claim.  Petitioner offers no explanation for the delay.  We conclude that, under the circumstances of this case, the time for our review has passed.

---

1.  Under article V, section 3(b)(8) of the Florida Constitution, this Court "[m]ay issue writs of mandamus and quo warranto to state officers and state agencies."

## I.

Article IV, section 7 of the Florida Constitution grants "the governor" the power to "suspend from office any state officer not subject to impeachment" and enumerates the grounds for suspension, including "neglect of duty" and "incompetence." Art. IV, § 7(a), Fla. Const.[2] A suspension is done "[b]y executive order stating the grounds and filed with the custodian of state records." *Id.* Article IV, section 7 then grants "[t]he senate" the power to, "in proceedings prescribed by law, remove from office or reinstate the suspended official." Art. IV, § 7(b), Fla. Const.

Although the text of article IV, section 7 does not attribute any role to the courts in suspension matters, our precedents recognize a narrow judicial role in reviewing the face of a suspension order to determine if it satisfies the constitutional requirement of " 'stating the grounds' of the officer's suspension." *Israel v. Desantis*, 269 So. 3d 491, 495 (Fla. 2019) (quoting art. IV, § 7(a), Fla. Const.). That is a "limited" role that entails no more than "determining whether the

---

2. As a "state officer not subject to impeachment," art. IV, § 7(a), Fla. Const., Petitioner falls within the scope of the Governor's suspension power.

executive order, on its face, sets forth allegations of fact relating to one of the constitutionally enumerated grounds of suspension." *Id.* (citing *State ex rel. Hardie v. Coleman,* 155 So. 129, 133 (Fla. 1934)). The allegations need only "bear some reasonable relation to the charge made against the officer." *Id.* at 496 (quoting *Hardie,* 155 So. at 133). The "some reasonable relation" standard is "a low threshold" to satisfy, *id.,* and the executive order need only satisfy it "on the whole," *id.* (quoting *Hardie,* 155 So. at 133).

Indeed, we have previously said that the courts are not a "check upon any erroneous [suspension] action on [the governor's] part," including "[a]ny mere error of judgment, whether free from or attended by improper motive." *State ex rel. Lamar v. Johnson,* 11 So. 845, 852 (Fla. 1892). Our constitution has instead "made the senate the sole check upon any erroneous action on [the governor's] part." *Id.*; *see Hardie,* 155 So. at 134 ("The matter of reviewing the [suspension] charges and the evidence to support them is solely in the discretion of the Senate . . . ."); *State ex rel. Kelly v. Sullivan,* 52 So. 2d 422, 425 (Fla. 1951) ("It is the function of the Senate, and never that of the Courts, to review the evidence upon which the Governor suspends an officer . . . .").

## II.

The August 4, 2022, Executive Order suspending Petitioner for "neglect of duty" and "incompetence" cites as the factual basis for the suspension two Joint Statements signed by Petitioner and other elected prosecutors from around the country,[3] as well as two presumptive non-enforcement policies purportedly instituted by Petitioner.

In the first Joint Statement, the signatories "pledge[d]" to, among other things, "use [their] discretion and not promote the criminalization of gender-affirming healthcare or transgender people." In the second Joint Statement, the signatories asserted that, among other things, they "decline to use [their] offices' resources to criminalize reproductive health decisions and commit to exercise [their] well-settled discretion and refrain from prosecuting those who seek, provide, or support abortions."

Regarding Petitioner's two policies, the Executive Order describes the first as a policy "of presumptive non-enforcement for

---

3. Petitioner signed the Joint Statements as "Andrew Warren" "State Attorney, 13th Judicial Circuit (Tampa), Florida."

certain criminal violations, including trespassing at a business location, disorderly conduct, disorderly intoxication, and prostitution." The Executive Order describes the second as a policy "against prosecuting crimes where the initial encounter between law enforcement and the defendant results from a non-criminal violation in connection with riding a bicycle or a pedestrian violation," including "crimes of misdemeanor resisting arrest without violence—for example, fleeing from a law enforcement officer."

After addressing the Joint Statements and policies, the Executive Order concludes that Petitioner's "avowed refusal to enforce certain criminal laws on a non-individualized, category-wide basis of his choosing is a neglect of duty in violation of his oath of office." The Executive Order explains that the "neglect of duty is not excused by prosecutorial discretion, because [Petitioner's] blanket policies ensure that he will exercise no discretion at all in entire categories of criminal cases." The Executive Order also concludes that Petitioner's "public proclamations of non-enforcement further demonstrate his incompetence and lack of judgment arising from his gross ignorance of his official duties."

- 6 -

## III.

Because Petitioner's unreasonable delay ultimately forms the basis for our decision to deny his petition, we review the more-than-six-month gap between Petitioner's suspension and his filing of the instant petition, and we briefly examine the federal district court proceedings which constitute the backdrop for Petitioner's dilatory conduct and on which Petitioner primarily relies in attacking the suspension.

On August 17, 2022—only thirteen days after his suspension—Petitioner filed suit against the Governor in the United States District Court for the Northern District of Florida. Petitioner sought injunctive and declaratory relief, including a preliminary injunction. Petitioner raised two claims. Claim I alleged a violation of the First Amendment, specifically that the Joint Statements were protected speech and that suspending Petitioner because he signed the Joint Statements was retaliation for Petitioner exercising his First Amendment rights. Claim II sought a writ of quo warranto "under Florida State Law" and alleged that the bases for suspension did not reasonably relate to either "incompetence" or "neglect of duty" and thus were "facially insufficient." The Governor filed a

consolidated motion to dismiss and response in opposition to the motion for preliminary injunction.

On September 29, 2022, the federal district court entered an order that in relevant part dismissed without prejudice Petitioner's state-law claim and allowed only the First Amendment claim to proceed. *Warren v. DeSantis*, No. 4:22cv302-RH-MAF, 2022 WL 6250952, at *1 (N.D. Fla. Sept. 29, 2022). The federal district court unsurprisingly dismissed Petitioner's state-law claim on Eleventh Amendment grounds. *See Pennhurst*, 465 U.S. at 121 ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment. . . . [A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").

Four months later, on January 20, 2023, the federal district court entered an order that "dismissed on the merits with prejudice" Petitioner's First Amendment claim and that "direct[ed] entry of judgment for the Governor." *Warren v. DeSantis*, 29 Fla. L. Weekly Fed. D115, D115, D125 (N.D. Fla. Jan. 20, 2023), *appeal docketed*, No. 23-10459 (11th Cir. argued May 2, 2023). The

federal district court ultimately concluded that the Governor would have suspended Petitioner based solely on factors that are not protected by the First Amendment and, as a result, that Petitioner was not entitled to any relief. *Id.* at D125.

Inexplicably, despite having previously dismissed Petitioner's state-law claim—a claim that challenged the facial sufficiency of the suspension order—the federal district court proceeded to reach various "conclusions" regarding the propriety of the suspension under Florida law. Indeed, the federal district court twice stated that the suspension "violated the Florida Constitution," *id.* at D115, D125, and the federal district court purported to decide certain "factual issue[s]," including whether "Mr. Warren neglected his duty or was incompetent," *id.* at D117. The federal district court did so even though its "jurisdiction over [Petitioner's state-law] claim [was] barred by the Eleventh Amendment," *Pennhurst*, 465 U.S. at 121, and even though "[i]t is the function of the [Florida] Senate, and never that of the Courts, to review the evidence upon which the Governor suspends an officer," *Sullivan*, 52 So. 2d at 425. At one point, the federal district court challenged the Governor to "simply rescind the suspension." *Warren*, 29 Fla. L. Weekly Fed. at D124.

And at another point, the federal district court seemingly questioned the ability of the Florida Senate to dutifully carry out its constitutional role in suspension matters, referring to that legislative body as "heavily partisan." *Id.*

Almost one month after the federal district court issued its merits order—extraneous comments and all—and more than six months after his suspension, Petitioner finally knocked on this Court's door and requested our "expeditious review." Although Petitioner in his petition for writ of quo warranto does challenge the facial sufficiency of the suspension order, Petitioner's primary argument relies on the principle of "collateral estoppel," or "issue preclusion." Specifically, Petitioner asserts that "a federal court has already held that the Executive Order is unconstitutional," and he argues that the federal court's "factual findings" are "[p]reclusive and [m]ust be [g]iven [e]ffect" by this Court. Petitioner's alternative petition for writ of mandamus relies entirely on "the District Court's Judgment."

Quite questionably, Petitioner presents his collateral estoppel arguments even though the federal district court dismissed all of Petitioner's claims. *See Bobby v. Bies*, 556 U.S. 825, 829 (2009)

- 10 -

("[I]ssue preclusion is a plea available to prevailing parties. . . . Issue preclusion, in short, does not transform final judgment losers, in civil or criminal proceedings, into partially prevailing parties."). And Petitioner presents these arguments even though the federal district court's order on the merits is currently the subject of an appeal *by Petitioner himself*. *Warren v. DeSantis*, No. 23-10459 (11th Cir. argued May 2, 2023). But we need not further address Petitioner's arguments or the federal district court's orders. As explained next, we deny the petition due to Petitioner's unreasonable, unexplained delay.

**IV.**

Under article V, section 3(b)(8) of the Florida Constitution, this Court "[m]ay issue writs of . . . quo warranto to state officers and state agencies."[4] "The term 'quo warranto' means 'by what authority' . . . ." *Whiley v. Scott*, 79 So. 3d 702, 707 (Fla. 2011).

---

4. This Court may also "issue writs of mandamus . . . to state officers and state agencies." Art. V, § 3(b)(8), Fla. Const. We do not separately address Petitioner's alternative request for a writ of mandamus, as that request is wholly predicated on "the District Court's Judgment," not on the facial sufficiency of the suspension order.

- 11 -

The writ "is the proper vehicle to challenge the 'power and authority' of a constitutional officer, such as the Governor." *Crist v. Fla. Ass'n of Crim. Def. Laws., Inc.*, 978 So. 2d 134, 138 n.3 (Fla. 2008) (quoting *Austin v. State ex rel. Christian*, 310 So. 2d 289, 290 (Fla. 1975)). The writ is thus the proper vehicle to challenge whether the Governor properly exercised the suspension power. *See Israel*, 269 So. 3d at 494. But in the suspension context, of course, that challenge "is limited to a facial review of the executive order of suspension." *Id.* at 497.

Although the writ of quo warranto—an extraordinary writ—is potentially available in various circumstances, "the granting of [an extraordinary] writ lies within the discretion of the court." *Id.* at 494 (quoting *Topps v. State*, 865 So. 2d 1253, 1257 (Fla. 2004)); *see also Boan v. Fla. Fifth Dist. Ct. of Appeal Jud. Nominating Comm'n*, 352 So. 3d 1249, 1252 (Fla. 2022) ("Article V, section 3(b)(8) . . . gives this Court discretionary jurisdiction to issue writs of quo warranto . . . ."). Indeed, "the nature of an extraordinary writ is not of absolute right." *Israel*, 269 So. 3d at 494 (quoting *Topps*, 865 So. 2d at 1257).

Given the nature of an extraordinary writ, there may be circumstances in which a court denies relief for "reasons other than the actual merits of the claim." *Topps*, 865 So. 2d at 1257. For example, a petitioner who unreasonably delays filing a petition for writ of quo warranto may see that petition denied on that basis. *See, e.g.*, *Thompson v. DeSantis*, 301 So. 3d 180, 182-84 (Fla. 2020) (declining to "consider" the petitioner's claims for quo warranto and mandamus relief against the Chair of the Supreme Court Judicial Nominating Commission (JNC), where "the Petitioner waited nearly six months" to challenge the JNC's list of nominees to fill a judicial vacancy, and citing *State ex rel. Pooser v. Wester*, 170 So. 736 (Fla. 1936), in which an unreasonable four-month delay precluded the grant of quo warranto relief). We conclude that this case involves unreasonable delay.

Here, within two weeks of his suspension, Petitioner sought a writ of quo warranto challenging the facial sufficiency of the suspension order. But Petitioner brought that claim in federal district court—a court that Petitioner should have known was wholly without jurisdiction to consider the claim. Indeed, just a few weeks later, that court informed Petitioner that his claim was

"bar[red] . . . in federal court" and that any "relief" would have to be sought "in state court." *Warren*, 2022 WL 6250952, at *2, *3. Yet Petitioner, who was ready to challenge the facial sufficiency of the suspension order within two weeks of his suspension, then waited almost five more months before bringing that claim in state court, all but ensuring that the 2023 regular session of the Florida Senate would come and go without any opportunity for that legislative body to potentially review the suspension. In now requesting our "expeditious review," Petitioner cites "the significant public interest," and he primarily relies on the purported "findings" of a federal judge who ultimately dismissed Petitioner's claims and whose final order was appealed by Petitioner himself. Under these circumstances involving such dilatory conduct by Petitioner, we decline to consider Petitioner's claims for relief against the Governor.

Whether Petitioner "invok[ed] this Court as a backup plan," as the Governor argues, or whether Petitioner had other reasons for the delay, we do not know. Petitioner is not saying. Petitioner's only reply on this point is that he "filed for relief in this Court promptly following judgment in the District Court" and that "no rule

sets a time limit within which [he] was required to file his Petition." That is hardly persuasive.

Petitioner's unreasonable delay does not necessarily leave him without any potential remedy. Indeed, the remedy that remains available is the one expressly contemplated by the Florida Constitution—i.e., "proceedings" in "[t]he senate." Art. IV, § 7(b), Fla. Const. "The Senate is nothing less than a court provided to examine into and determine whether or not the Governor exercises the power of suspension in keeping with the constitutional mandate." *Hardie*, 155 So. at 134. There is no reason to doubt that the elected members comprising that legislative body will "be just" in carrying out their "solemn duty." *Id.*

## V.

The petition is denied.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
FRANCIS, J., concurs with an opinion.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

FRANCIS, J., concurring.

I agree with the majority denying Mr. Warren's petition as untimely.

I also agree with the majority's observation that the text of article IV, section 7 doesn't attribute any role to the courts in suspension matters; only our precedents do. *See* majority op. at 3.

I write solely to explore how those precedents, in vacillating on how much involvement we should have, demonstrate the thorniness of these suspension cases.

The Court's involvement in these suspension cases flows from our enumerated power to issue extraordinary writs, including writs of quo warranto. *Israel v. DeSantis*, 269 So. 3d 491, 494-95 (Fla. 2019) (citing art. V, § 3(b)(8), Fla. Const.); *see also* art. V, § 4(b)(3), Fla. Const. (authorizing district courts of appeal to issue the writ of quo warranto); art. V, § 5(b), Fla. Const. (authorizing circuit courts to issue the writ of quo warranto). Under article V, section 3(b)(8) of the Florida Constitution, this Court "[m]ay issue writs of . . . quo warranto to state officers and state agencies." Quo warranto is used "to determine whether a state officer or agency has improperly *exercised* a power or right derived from the State." *League of*

*Women Voters of Fla. v. Scott*, 232 So. 3d 264, 265 (Fla. 2017) (quoting *Fla. House of Representatives v. Crist*, 999 So. 2d 601, 607 (Fla. 2008)).  The writ of quo warranto is the proper vehicle to challenge a governor's suspension order.  *See Israel*, 269 So. 3d at 494.

Reconciling our state constitution's clear commitment of the power to review suspensions to the Senate and our power to issue extraordinary writs raises two serious questions to this writer: (1) are such suspension orders even justiciable in the first place? and, if they are, (2) what is the limitation on this Court's review of such orders?

With respect to the first question, the short answer is, this Court has never addressed this before.  In the past, in unrelated cases, we have looked to the federal political question doctrine for guidance in evaluating whether certain constitutional challenges present unworkable political questions.  *See, e.g., Citizens for Strong Schs., Inc. v. Fla. State Bd. of Educ.*, 262 So. 3d 127 (Fla. 2019).  Yet we have not explicitly applied the political question doctrine to our role in reviewing suspensions.

The Governor makes a compelling argument that we should. Our Constitution empowers the Senate with the authority to review suspensions. Art. IV, § 7(b), Fla. Const. That provision constitutes "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993)). The political question doctrine's roots in separation of powers are especially relevant in our constitutional system, where separation of powers is textually compelled. *See* art. II, § 3, Fla Const. ("No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."). While the Governor's reference to the impeachment process is textually distinct from suspension (since the suspension provision requires the governor produce an executive order and the impeachment provision does not), the two contexts do assign the trial to the same venue: the Florida Senate. *Compare* art. III, § 17(c), Fla. Const., *with* art. IV, § 7(b), Fla Const.

Assuming the Court *does* have a role in reviewing these suspension orders, the second question is, what is the scope of that review? Again, our precedents don't provide a clear answer. In

- 18 -

fact, this body has taken two different approaches: one narrow, the other broad. *Compare State ex rel. Lamar v. Johnson*, 11 So. 845, 851-852 (Fla. 1892) (opining that court review of suspension orders was a "bald usurpation of the constitutional power of the chief executive" and identifying "the senate [as] the **sole** check upon any erroneous action on [the governor's] part.") (emphasis added), *and State ex rel. Kelly v. Sullivan*, 52 So. 2d 422, 425 (Fla. 1951) ("[T]he courts may not inquire . . . as to the sufficiency of the evidence for suspension" since that power of review instead "exists in the Senate."), *with State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1934) (requiring suspensions orders to "bear some reasonable relation to the charge made against the officer," which necessitates some factual inquiry), *and Israel*,[5] 269 So. 3d at 496 (same, citing *Hardie*, 155 So. at 133).

---

5. While our Court did discuss proper sufficiency review in *Israel*, we did not squarely tackle our review's scope there. 269 So. 3d at 494. *Israel* dealt with an appeal from a circuit court's denial of a petition for a writ of quo warranto. *Id.* Neither party asserted any claim about the scope of the writ of quo warranto or the nature of our review of suspension orders, and the Governor did not urge us to find the judiciary's authority was limited in the manner he does now. Our other recent case discussing suspension orders, *Jackson v. DeSantis*, 268 So. 3d 662, 663 (Fla. 2019), is also distinguishable because Jackson's argument that the order

Incorporating the political question doctrine into our suspension review bolsters support for an approach that our review should be limited to ensuring that a governor took the necessary steps to exercise his power—producing a written order identifying an enumerated ground and filing it with the custodian. Art. IV, § 7(a), Fla. Const.

Delving into whether the suspension order's allegations are reasonably related to an enumerated ground likely treads too far into an inherently political realm, the merits of which are textually committed to the Florida Senate. *See generally Zivotofsky*, 566 U.S. at 195.[6]

_____

suspended her for conduct before her current term in office was facially untrue. Because none of the parties in our recent cases have asked us to consider the textual basis for our review—until the Governor did here—we have not recently held that we can review the sufficiency of an order in this broad a manner; we have assumed it. *See CCM Condo. Ass'n, Inc. v. Petri Positive Pest Control, Inc.*, 330 So. 3d 1, 6 (Fla. 2021) (Canady, C.J., dissenting) ("A decision's authority as precedent is limited to the points of law raised by the record, considered by the court, and determined by the outcome. The assumptions a court uses to reach a particular result do not themselves create a new precedent or strengthen existing precedent." (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* 44, 84 (2016)).

6. It is also not entirely clear how we would interpret our political question doctrine in this context. In the past, our Court

All that said, for today's purposes, Mr. Warren's petition is properly denied as untimely.

LABARGA, J., dissenting.

Andrew Warren was first elected in November 2016 and assumed the office of State Attorney for the Thirteenth Judicial Circuit of Florida in January 2017. In the 2016 general election, he defeated the incumbent by a margin of less than one percent of the vote. Four years later, in the 2020 general election, he was reelected by a margin of more than six percentage points.

Before this Court then, is the issue of the suspension of a twice-elected prosecutor who was convincingly reelected to

has mainly employed the doctrine when a party implores us to fashion a judicially unmanageable standard. *See, e.g.*, *Citizens for Strong Schs., Inc.*, 262 So. 3d at 140-43. The federal political question doctrine is not so limited, and there is a significant debate among constitutional scholars on whether the doctrine is: (1) part of Article III jurisdiction, operating as a quasi-jurisdictional bar to bring suit; or (2) is only a judicial policy decision to refrain from interfering in unworkable political contexts. *See generally,* Scott Dodson, *Article III and the Political Question Doctrine,* 116 Nw. U. L. Rev. 681 (2021). United States Supreme Court precedent seemingly discussed both rationales. *Id.* As the Governor notes, some courts have observed that the two concepts work in concert: that "institutional limitations of the judiciary" are reflected in "the lack of manageable standards to channel any judicial inquiry" into political questions. *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843 (D.C. Cir. 2010) (citing *Nixon,* 506 U.S. at 228–29).

represent the interests of more than one million Floridians in the Thirteenth Judicial Circuit.

At the time of Warren's suspension in August 2022, he was eighteen months into his second four-year term. Even today, he still has roughly the same amount of time left in his term. Despite this amount of time remaining on the clock, this Court has denied Warren's petition on the grounds of untimeliness.

Given that this case involves the suspension of a then-sitting elected official—for whom a substantial portion of the term yet remains—I am unpersuaded by the majority's conclusion that Warren's petition is properly denied on the ground of unreasonable delay.

I respectfully dissent.

Original Proceeding – Quo Warranto

David B. Singer and Matthew T. Newton of Older Lundy Koch & Martino, Tampa, Florida; Jean-Jacques Cabou, Alexis E. Danneman, and Margo R. Casselman of Perkins Coie LLP, Phoenix, Arizona; and David O'Neil of Debevoise & Plimpton LLP, Washington, District of Columbia,

for Petitioner, The Honorable Andrew H. Warren

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa and Daniel William Bell, Chief Deputy Solicitors General, David M. Costello, Deputy Solicitor

General, and Robert Scott Schenck, Solicitor General Fellow, Office of the Attorney General, Tallahassee, Florida; Ryan Newman, General Counsel, and Ray Treadwell, Chief Deputy General Counsel, Executive Office of the Governor, Tallahassee, Florida; and George T. Levesque and Jeff Aaron of GrayRobinson, P.A., Tallahassee, Florida,

> for Respondent, The Honorable Ron DeSantis, in his Official Capacity as Governor of Florida

Lawrence J. Dougherty of Guerra King, P.A., Tampa, Florida,

> for Amici Curiae Constitution Revision Commission Members and State Constitutional Law Scholars

Robert Wayne Evans and Benjamin M. Lagos of Allen, Norton & Blue, P.A., on behalf of Florida Sheriffs Association, Tallahassee, Florida; J. David Marsey, of Rumberger Kirk & Caldwell, on behalf of the Florida Police Chiefs Association, Tallahassee, Florida; and Arthur Ivan Jacobs of Jacobs Scholz & Wyler, LLC, on behalf of Florida Prosecuting Attorneys Association, Fernandina Beach, Florida,

> for Amici Curiae Florida Sheriffs Association, Florida Police Chiefs Association, and Florida Prosecuting Attorneys Association